[Cite as *Berkheimer v. REKM, L.L.C.*, 2018-Ohio-2668.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| MICHAEL BERKHEIMER, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2017-12-165 |
| | : | O P I N I O N |
| - vs - | | 7/9/2018 |
| | : | |
| REKM, LLC, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2017-03-0490

Minnillo & Jenkins Co., LPA, Christian A. Jenkins, David M. Gast, Robb S. Stokar, 2712 Observatory Avenue, Cincinnati, Ohio 45208, for plaintiff-appellant

Raymond H. Decker, Jr., 600 Vine Street, Suite 412, Cincinnati, Ohio 45202, for defendant-appellee, REKM, LLC d.b.a. Wings on Brookwood

Locke Lord LLP, Ashlee M. Knuckey, 111 South Wacker Drive, Chicago, Illinois 60606, for defendants-appellees, Gordon Food Service, Inc. and Wayne Farms, LLC

Green & Green, Jared A. Wagner, 800 Performance Place, 109 N. Main St., Dayton, Ohio 45202, for defendant-appellee, Gordon Food Services, Inc.

**S. POWELL, P.J.**

{¶ 1} Plaintiff-appellant, Michael Berkheimer, appeals the decision of the Butler County Court of Common Pleas, which granted judgment on the pleadings to defendants-

appellees REKM, LLC, Gordon Food Service (GFS), and Wayne Farms, LLC. For the reasons discussed below we reverse the decision of the lower court.

{¶ 2} Berkheimer allegedly ingested a bone in a "boneless wing," a chicken product that he ordered at "Wings on Brookwood," a restaurant owned by REKM. The bone lodged in his throat, causing infection and injury. Berkheimer filed a complaint against REKM, its food supplier GFS, and Wayne Farms, the manufacturer of the chicken product. In pertinent part, Berkheimer's complaint alleged:

> 13. On April 1, 2016, Plaintiff was a patron at Wings on Brookwood, having dinner with seven (7) other patrons.
>
> 14. Plaintiff ordered "Boneless Wings" as his dinner entrée at Wings on Brookwood.
>
> 15. On April 1, 2016, Wings on Brookwood advertised boneless wings and the menu did not contain any warnings, notifications or disclaimers that the Boneless Wing products may contain bones. (Exhibit A).
>
> 16. Plaintiff ordered [Boneless] Wings, as described on Wings on Brookwood's menu.
>
> 17. Plaintiff was served what he believed to be boneless wings as advertised by Wings on Brookwood.
>
> 18. While Plaintiff was consuming a boneless wing, he suddenly felt a foreign object in his throat.
>
> * * *
>
> 20. Plaintiff immediately stopped eating his meal and went to the bathroom in an attempt to clear his throat. Plaintiff regurgitated, but was unsuccessful in clearing the object.
>
> * * *
>
> 22. In the days that followed, Plaintiff was able only to consume small amounts of liquids and minimal food. At no time did Plaintiff attempt to consume any other chicken products following his meal at Wings on Brookwood.
>
> 23. On April 4, 2016, Plaintiff reported to the emergency room due to a high fever and feeling the foreign object in his throat.

24. Upon examination, physicians discovered a chicken bone lodged in Plaintiff's throat.

* * *

28. Plaintiff has been permanently injured as a result of ingesting the bone including, but not limited to, decreased cardiac function and paralysis of the [phrenic] nerve.

29. Based on representations from counsel for Wings on Brookwood, the restaurant procures its boneless wing products from GFS.

30. On information and belief, GFS distributed the chicken product (Boneless Skinless Chicken Tenderloins Clipped, Supplier 14411, Item Code 251925) to REKM, LLC that was the proximate cause of Plaintiff's injury.

31. GFS obtained Boneless Skinless Chicken Tenderloins Clipped from supplier Wayne Farms.

32. Wayne Farms is a chicken processor that provides various fresh and frozen chicken products for sale to GFS and other restaurant suppliers. As a result, it was foreseeable to Wayne Farms and GFS that the Boneless Skinless Chicken Tenderloins Clipped (Called Jumbo Clipped Chicken Tenderloins by Wayne Farms) would eventually be sold to retail customers such as Plaintiff.

33. Wayne Farms advertises that its products are "hand cut" and that the boneless products are sold without bones. (Exhibit B).[1]

{¶ 3} Berkheimer asserted claims against REKM for negligence, breach of warranty, adulterated food, misbranded food, and Ohio Deceptive Trade Practices Act. Against GFS, Berkheimer alleged negligence, breach of warranty, strict liability, and Ohio Deceptive Trade Practices Act. And against Wayne Farms, Berkheimer pleaded negligence, breach of warranty, strict liability, adulterated food, misbranded food, and Ohio Deceptive Trade Practices Act.[2]

---

1. Exhibit B is a flyer for Wayne Farm's chicken products. It states that Wayne Farm's "boneless chicken items are all deboned by hand, ensuring precision and accuracy."

{¶ 4} After answering the complaint, REKM moved for judgment on the pleadings under Civ.R. 12(C). REKM argued that Berkheimer's negligence claim failed because REKM had no duty to warn Berkheimer of a bone in a boneless wing and that Berkheimer had the responsibility to anticipate and guard against the possibility of a bone in his meal. REKM further argued that all of Berkheimer's claims were derivative of the negligence claim. GFS and Wayne Foods also moved for judgment on the pleadings and asserted similar arguments.

{¶ 5} The lower court granted judgment in favor of the defendants on all of Berkheimer's claims. The court found, as a matter of law, that bones are a natural part of chicken and Berkheimer should therefore have been on guard for bone in his boneless wing. The court further found that the term "boneless" was an irrelevant consideration as common sense dictated that one could find bones in a chicken dish, even if that dish were labeled "boneless."

{¶ 6} Berkheimer appeals, raising three assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN APPLYING THE FOREIGN-NATURAL TEST TO APPELLANT'S CLAIMS AS IT IS NOT THE APPLICABLE LEGAL TEST IN OHIO.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE TRIAL COURT ERRED WHEN IT RULED APPELLANT FAILED TO STATE A CLAIM UNDER THE REASONABLE EXPECTATION TEST.

{¶ 11} Berkheimer's first and second assignments of error argue that the trial court erred in dismissing his negligence cause of action and this court will address them together.

---

2. Berkheimer also filed a cause of action against United Healthcare Service, Inc. for its subrogation rights to medical services or payments made on his behalf. United asserted cross-claims against the remaining defendants. In its decision, the court dismissed Berkheimer's claim against United and dismissed United's cross-claims against the other defendants. United did not separately appeal the dismissal of its cross-claims and has not otherwise participated in this appeal.

The defendants sought and the court granted dismissal under Civ.R. 12(C), which provides "[a]fter the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings." Civ.R. 12(C) motions are specifically for resolving questions of law. *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001). Therefore, this court's standard of review is de novo. *Cyrus v. Home Depot USA*, 12th Dist. Clermont No. CA2007-09-098, 2008-Ohio-4315, ¶ 18.

{¶ 12} "When a motion to dismiss comes at the pleading stage, it is viewed with disfavor and should rarely be granted." *C.E. Greathouse & Son v. City of Middletown*, 12th Dist. Butler No. CA85-05-047, 1986 Ohio App. LEXIS 7393, *4 (June 30, 1986), citing *Kobe v. Kobe*, 61 Ohio App.2d 67, 68 (8th Dist.1978). "When considering a Civ.R. 12(C) motion for judgment on the pleadings, the trial court is restricted to consider only the allegations in the pleadings and must construe as true all the material allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are in favor of the nonmoving party. *Whaley* at 581. Dismissal is appropriate under Civ.R. 12(C) when, after construing all material allegations in the complaint in favor of the nonmoving party, the court finds beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996).

{¶ 13} The Ohio Supreme Court held that the possible presence of a piece of oyster shell in or attached to a fried oyster was so well known to anyone who eats oysters that, as a matter of law, one who eats oysters could reasonably anticipate and guard against eating such a shell, especially where the piece of oyster shell was large. *Allen v. Grafton*, 170 Ohio St. 249 (1960). In finding for the defendant, the court reviewed two tests commonly applied by other courts with regard to the subject of injurious bones in meat dishes.

{¶ 14} This court summarized those two tests in *Mathews v. Maysville Seafoods,*

- 5 -

*Inc.*, 76 Ohio App.3d 624 (12th Dist.1991). First, the "foreign-natural" test provides: "[b]ones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones." *Id.* at 625, quoting *Mix v. Ingersoll Candy Co.*, 6 Cal.2d 674, 682 (Cal.1936). Second, the "reasonable expectation" test asks what the consumer should reasonably expect to find in his or her food, not what might be natural to the ingredients of that food prior to preparation. *Id.*, citing *Zabner v. Howard Johnson's Inc.*, 201 So.2d 824, 826-827 (Fla.App.1967).

{¶ 15} In *Allen*, the Ohio Supreme Court did not formally adopt either test, but seemed to incorporate aspects of both in its analysis. The court explained:

> In the instant case, it is not necessary to hold, as some of the above-cited cases do, that, because an oyster shell is natural to an oyster and thus not a substance "foreign" to an oyster, no liability can be predicated upon the sale of a fried oyster containing a piece of oyster shell. However, the fact, that something that is served with food and that will cause harm if eaten is natural to that food and so not a "foreign substance," will usually be an important factor in determining whether a consumer can reasonably anticipate and guard against it. * * *
>
> In our opinion, the possible presence of a piece of oyster shell in or attached to an oyster is so well known to anyone who eats oysters that we can say as a matter of law that one who eats oysters can reasonably anticipate and guard against eating such a piece of shell, especially where it is as big a piece as the one described in plaintiff's petition.

*Allen* at 258-259.

{¶ 16} In *Mathews*, this court applied the rule of *Allen* in a case involving a fish bone found in a filet of fish at a fast food restaurant. This court concluded that the trial court properly granted summary judgment to the defendants because a consumer could reasonably anticipate and guard against the presence of a fish bone in a fish fillet. *Mathews,* 76 Ohio App.3d at 627. We noted that the fish bone was alleged to have been approximately

one and one-half inch long and that other cases involving fish bones had held similarly for fish bone lengths of one centimeter and one inch. *Id.*

{¶ 17} This court concludes that it is not feasible to undertake the review called for by *Allen* with the record on appeal. The trial court dismissed Berkheimer's case at the pleading stage when material facts remained undetermined. The trial court therefore lacked the facts necessary to determine beyond doubt that Berkheimer could prove no set of facts that may entitle him to relief.

{¶ 18} The complaint provides minimal detail identifying the chicken product allegedly consumed by Berkheimer. The only description consists of phrases such as "boneless wings" and "boneless, skinless chicken tenderloins, clipped," the latter of which was the identity of the chicken product "upon information and belief" as based on pre-suit discussions between counsel. Thus, it appears that Berkheimer was not certain at the time of the filing of the complaint as to the chicken product he consumed at Wings on Brookwood.

{¶ 19} A "boneless" chicken does not exist in nature, so some level of processing necessarily was involved in the production of the food product. Yet the pleadings offer limited details in this regard. In *Thompson v. Lawson Milk Co.*, 48 Ohio App.2d 143 (10th Dist.1976), which involved a processed meat product, i.e., chopped ham, the court found a question of fact with respect to whether a consumer would anticipate and could guard against breaking a tooth on hard cartilage while eating the chopped ham. *Id.* at 147. Here, the only information regarding processing is contained in the flyer for "boneless skinless chicken tenderloins clipped." The flyer states that the product is "deboned by hand" but without explaining the hand deboning process. Footnoted text on the same flyer explains that the product is "minimally processed," which is similarly vague and unhelpful.

{¶ 20} The complaint also fails to provide detail concerning the size of the chicken bone, other than to assert it was "large." In both *Allen* and *Matthews,* the size of the injurious

object was a factor considered by the court in determining whether a person could reasonably anticipate or guard against its consumption.

**{¶ 21}** The trial court's decision to dismiss Berkheimer's complaint at the pleading stage effectively stands for the proposition that there will never be a set of circumstances under which a plaintiff can recover for injuries suffered after ingesting a bone in a meat dish. This court does not construe the rule of *Allen* so broadly. Instead, *Allen* requires the court to consider the specific facts of the case in determining whether a consumer can reasonably anticipate and guard against eating an injurious object in a meat dish. That the object was a bone natural to the product is an important factor but is only one factor in that analysis. Thus, this is not an issue that is typically appropriate for a judgment on the pleadings.

**{¶ 22}** Notably, nearly every Ohio case that we have reviewed that has applied the rule of *Allen* in favor of the defendant has resolved the matter in summary judgment. *See Sharp v. Chipotle Mexican Grill of Colorado, LLC*, Franklin C.P. No. 11CV10041, 2013 Ohio Misc. LEXIS 3007 (Aug. 15, 2013) (chicken bone in chicken burrito); *Parianos v. Bruegger's Bagel Bakery*, 8th Dist. Cuyahoga No. 84664, 2005-Ohio-113 (pig bone in a sausage patty, which was part of a sausage, egg, and cheese bagel sandwich); *Lewis v. Handel's Homemade Ice Cream & Yogurt*, 11th Dist. Trumbull No. 2002-T-0126, 2003-Ohio-3507 (pistachio shells in a pistachio nut ice cream cone); *Ruvolo v. Homovich*, 149 Ohio App.3d 701, 2002-Ohio-5852 (8th Dist.) (chicken bone in a chicken gordita sandwich); *Mitchell v. T.G.I. Fridays*, 140 Ohio App.3d 459 (7th Dist.2000) (clam shell in a fried clam strip); *Soles v. Cheryl & Co. Gourmet Foods & Gifts*, 3d Dist. Union No. 14-99-36, 1999 Ohio App. LEXIS 5529 (Nov. 23, 1999) (pecan shells in a pecan cookie); *Patton v. Flying J, Inc.*, 6th Dist. No. WD-96-056, 1997 Ohio App. LEXIS 2402 (June 6, 1997) (chicken bone in a chicken sandwich); *Krumm v. ITT Continental Baking Co.*, 5th Dist. Fairfield No. 23-CA-81, 1981 Ohio App. LEXIS 12451 (Dec. 9, 1981) (cherry pits in a cherry pie); and *Schoonover v. Red*

*Lobster*, 1st Dist. Hamilton No. C-790547, 1980 Ohio App. LEXIS 10206 (Oct. 15, 1980) (fish bone in filet of sole).

{¶ 23} Accordingly, this court concludes that the lower court erred in granting judgment on the pleadings to the defendants. Berkheimer's first and second assignments of error are therefore sustained.

{¶ 24} Assignment of Error No. 3:

{¶ 25} THE TRIAL COURT ERRED BY EVALUATING ALL OF APPELLANT'S CLAIMS UNDER A NEGLIGENCE ANALYSIS.

{¶ 26} In his third assignment of error, Berkheimer argues that the court erred in dismissing his remaining claims against the defendants. Berkheimer argues that the other claims were all independent of the negligence cause of action.

{¶ 27} The defendants do not argue pleading deficiencies in the various additional claims in Berkheimer's complaint. Instead, the defendants argue that the court's holding with respect to the negligence claim nullifies those claims because of their derivative nature. The standard of review of a judgment rendered pursuant to Civ.R. 12(C) requires us to accept the material allegations in the complaint as true. Upon review, Berkheimer has properly pleaded those additional claims and the court erred in dismissing them.

{¶ 28} Judgment reversed with respect to the dismissal of Berkheimer's claims against REKM, GFS, and Wayne Farms but affirmed as to the dismissal of claims by and against United Healthcare Service, Inc., and the matter is remanded for further proceedings.

RINGLAND and PIPER, JJ., concur.