[Cite as *White v. Stotts*, 2010-Ohio-4827.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

DARRELL WHITE,

    PLAINTIFF-APPELLANT,            CASE NO.  1-10-44

    v.

KEVIN STOTTS, ET AL.,              O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV2010-0041

**Judgment Affirmed**

Date of Decision:    October 4, 2010

**APPEARANCES:**

    *Darrell White,* Appellant

    *Kevin Stotts,* for Appellees

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Darrell White, appeals the judgment of the Court of Common Pleas of Allen County granting summary judgment in favor of Defendant-Appellees, Kevin Stotts, individually, Attorney Kevin Stotts Law Firm [sic], Attorney Kevin Stotts Law Firm Partners [sic], and Attorney Kevin Stotts Law Firm Title Company [sic], (hereinafter collectively referred to as "Stotts"), and dismissing White's complaint. In his appeal, White alleges that the trial court erred in the discovery process, and erred by not compelling answers to his motions; by not abiding by the civil rules; by refusing to recuse the trial judge; by miscalculating the discovery dates; by failing to join necessary defendants; by refusing to sanction Stotts for allegedly failing to abide by the civil rules; by ruling on Stotts' motion for summary judgment despite alleged improper service of the motion; by failing to follow the law; by refusing to allow witnesses to testify; and, by not freely allowing White to amend his complaint. Based upon the following, we affirm the judgment of the trial court.

{¶2} In June 2009, White filed a "Complaint to Resolve Matter of Contractual Dispute" against Stotts in the Court of Common Pleas of Franklin County, Ohio. In his complaint, White argued that, in July 2007, he dismissed Stotts, his attorney, for malpractice, "dereliction of duty," "ineffectiveness of counsel," "fraud," "co-conspiracy to fraudulent behavior," "extortion," "co-

conspiracy to extortion," "discrimination," "co-conspiracy to discrimination," "unethical behavior," "not in client best interest," "misrepresentation," and "more to be determine at later date." White further alleged that Stotts' actions caused him monetary, property, and reputation damage. Specifically, White claimed damages for lost cash investments, lost cash value of property, loss of cash extorted, loss of cash in several ventures, loss of profits from several ventures, loss of interest, legal fees, and traveling expenses. The claimed damages were all in conjunction with several real properties, a bar, a bus company, and a day care center. White sought compensatory damages of $12 million and punitive damages for "pain suffering, mentally and physically, financially and my reputation" for $75 million. Shortly thereafter, White filed a motion for court-appointed counsel.

{¶3} In July 2009, Stotts filed a motion to dismiss White's complaint on the basis that the Court in Franklin County lacked jurisdiction over him, and that White's claim of alleged malpractice had lapsed under the statute of limitations pursuant to R.C. 2305.11. Additionally, Stotts filed a motion to transfer the matter to the Court of Common Pleas of Allen County. White then filed a "Motion for Default Judgment" in the Court in Franklin County, asserting that Stotts had failed to plead or otherwise defend against the complaint; a "Motion Not to Transfer," alleging that venue was appropriate in Franklin County; and, a "Motion Not to Dismiss," arguing that his claim was not barred by the statute of limitations

because multiple events had tolled the statute of limitations period. The alleged tolling events included that White had several fair housing organizations and the Columbus Civil Rights Commission investigate his claims, and had the office of disciplinary counsel investigate Stotts; that White sought advice from other attorneys on the matter; that White continued to have an attorney-client relationship with Stotts in August 2007; and, that White had been hospitalized in July 2008, had been in a nursing home, had undergone physical therapy, had been under the care of several veterans' clinics, and had been arrested and confined. White did not allege specific time periods for these events.

{¶4} In August 2009, White filed a request for admissions.

{¶5} In September 2009, the Court in Franklin County denied White's motion for court-appointed counsel and Stotts' motion to transfer venue to Allen County. Thereafter, Stotts filed an amended motion to transfer venue to Allen County.

{¶6} In December 2009, White filed a "Motion Not to Dismiss a Pro Se Litigant Complaint that have Facts and Merit Demand for Jury Trial," a motion to disqualify Judges Reed and Warren of Allen County on the basis of conflict of interest, bias, and prejudice, a request for interrogatories and documents, a "Motion to Amend to complaint Civil Conspiracy," a "Motion of Mental Distress Intentional Infliction and Deliberate Indifference," and a "Motion of Fact on

Tolling Time." The "Motion of Fact on Tolling Time" stated that White initiated an "Ohio Fair Plan" investigation in August 2007, which concluded in August 2008.

{¶7} In January 2010, White filed a "Motion for Default Judgment after Defendant's Non Compliance's [sic] on case No. 09-CV06-8547." Later that month, the Court in Franklin County granted Stotts' motion to transfer the case to the Court of Common Pleas of Allen County. The Court in Allen County then issued a pretrial scheduling order, requiring discovery to be completed by September 30, 2010. Thereafter, White filed another request for interrogatories, a request for production of documents, and also a "Motion of Objection of Conflict of Interest of Judge." In his motion, White argued that Judge Warren had a conflict because he would be called as a witness to the case.

{¶8} In February 2010, White filed a motion for change of venue and a "Motion for Judge Reed and Judge Warren to Recuse Themselves," arguing that Judges Reed and Warren had previously presided over his criminal trial, and, consequently, would be partial, biased, and prejudiced against him in the current civil case. Thereafter, the trial court overruled the motion. White filed a notice of appeal from the trial court's overruling of his motion for change of venue and motion to recuse the trial judges. Thereafter, Stotts filed an answer to White's complaint, asserting that the complaint failed to state a claim upon which relief

could be granted; that the claim was barred by the statute of limitations; that the claims lacked consideration; and, that White failed to mitigate damages

{¶9} In March 2010, White filed a reply to Stotts' answer, asserting that he had stated material facts upon which relief could be granted; that his claim was not barred by the statute of limitations because it was a contract dispute, or, alternately, that time was tolled due to his hospitalization and the various ongoing investigations; and, that he did not fail to mitigate damages. Additionally, this Court sua sponte dismissed White's February 2010 appeal on the basis that the judgments were not final orders.

{¶10} In April 2010, White filed a "Motion for Joinder to Lawsuit Claim," moving the court to join "Kevin Stotts' Malpractice Insurance Company," "Partner's Insurance Company," and "Title Company Insurance Company."

{¶11} Shortly thereafter, Stotts filed a Motion for Summary Judgment, arguing that, by White's own admission, their attorney-client relationship terminated in July 2007; that White did not file his complaint until June 2009; that White's pro se complaint essentially claimed legal malpractice; that the applicable statute of limitations for legal malpractice was one year after the cause of action accrued; and, that, consequently, White's claims were barred by the statute of limitations. Stotts attached to his motion an affidavit stating that, in June 2007, he represented White regarding the purchase of two parcels of real estate; that, in July

2007, White terminated his legal representation; and, that, since July 2007, he had not represented White and had had no contact with him.

{¶12} White then filed a "Motion of Manifested Injustice on Behalf of Hon. Judge Warren," asserting that, during the pretrial, the trial court taxed him $1,000 as an indigent litigant; that he was not permitted to address his pleadings; the that trial court refused to compel Stotts to produce documents requested during discovery; that the trial court acted as if it did not understand White's assertions and did not allow the subpoenaed witnesses to testify at the hearing; and, that he was "cut off" from speaking. Additionally, White filed a "Motion for Leave to Amend Date of Proximate Accrued Cause of Discovery of Damage Date on Complaint," to amend the date of alleged injury and damages from July 2007 to April 27, 2009, and a "Motion for Summary Judgment" on the basis that Stotts failed to answer interrogatories; that Stotts failed to produce requested documents; and, that he had properly amended the date of alleged injury and damages to April 27, 2009, or, alternately, that the statute of limitations period was tolled. Further, White filed an "Affidavit of Disqualification" against Judges Reed and Warren.

{¶13} In May 2010, the Supreme Court of Ohio denied White's affidavit seeking disqualification against Judges Reed and Warren from presiding in his case. White filed a "Notice Plaintiff Did Not Receive Summary Judgment Filed by Defendant on 4-21-10." Several days later, White filed a "Plaintiff Response to

a No Response Summary Judgment of Defendants," asserting that the trial court should deny Stotts' motion for summary judgment.

{¶14} Later that month, the trial court denied White's motion for summary judgment, finding that White failed to set forth any grounds for a viable breach of contract claim, and that White's allegation that the statute of limitations period did not accrue until April 27, 2009, was meritless. Additionally, the trial court granted Stotts' motion for summary judgment, finding that, by White's own admission, the attorney-client relationship terminated in July 2007; that, at the latest, the statute of limitations began to run on July 31, 2007; that the statute of limitations expired prior to White's filing of his initial complaint on June 7, 2009; that White failed to demonstrate any of the "tolling" exceptions to extend the time period under the Revised Code; and, that, consequently, Stotts was entitled to judgment as a matter of law. Accordingly, the trial court dismissed White's complaint.

{¶15} It is from the trial court's dismissal of his complaint that White appeals, presenting the following pro se assignments of error for our review.

*Assignment of Error No. I*

**THE COURT ERROED [SIC] IN DISCOVERY PROCESS COMPELIZATION [SIC].**

*Assignment of Error No. II*

**THE COURT ERROED [SIC] IN NOT COMPELING [SIC] ANSWERS TO MOTIONS.**

*Assignment of Error No. III*

**THE COURT ERROED [SIC] IN NOT COMPELING [SIC] CIVIL RULE 33 AND 34.**

*Assignment of Error No. IV*

**THE COURT ERROED [SIC] NOT RECUSING JUDGE.**

*Assignment of Error No. V*

**THE COURT ERROED [SIC] IN THE START AND END DATE OF DISCOVERY OF INJURY.**

*Assignment of Error No. VI*

**THE COURT ERROED [SIC] IN NOT JOINING THE PROPER DEFENDANTS.**

*Assignment of Error No. VII*

**THE COURT ERROED [SIC] IN NOT SANCTIONING DEFENDANTS FOR NOT ABIDING BY CIVIL RULES.**

*Assignment of Error No. VIII*

**THE COURT ERROED [SIC] WHEN RULING ON SUMMARY AFTER WAS NOTIFIED PLAINTIFF WAS NOT SERVED A SUMMARY BY DEFENDANT FOR A PROPER RESPONSE.**

*Assignment of Error No. IX*

**THE COURT ERROED [SIC] WHEN NOT GOING BY FRAUD STATUES [SIC] AND CONTRACT IN WRITING STATUES [SIC] AND OPPORTUNITY TO SAVE STATUES [SIC].**

*Assignment of Error No. X*

**THE COURT ERROED [SIC] NOT PERMITTING SUBPOENA WITNESSES TO TESTIFY TO ESTABLISH GENUINE MATERIAL FACTS.**

*Assignment of Error No. XI*

**THE COURT ERROED [SIC] NOT FREELY AMENDING MOTIONS.**

{¶16} Due to the nature of White's arguments, we elect to address his assignments of error in a different order than presented in his brief, and to address his fifth and ninth, and first, second, third, and seventh assignments of error together.

*Standard of Review*

{¶17} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distr. Co.*, 148 Ohio App.3d 596, 604-605, 2002-Ohio-3932, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Ed.*, 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the

motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chemical Corp.*, 73 Ohio St.3d 679, 686-687, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59, 1992-Ohio-95.

{¶18} The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107. In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. Id. at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings. Id.; Civ.R. 56(E).

*Assignment of Error No. IV*

{¶19} We interpret White's fourth assignment of error as arguing that the trial judge erred in refusing to recuse himself from the case. Specifically, White argues that the Supreme Court of Ohio ruled that Judge Warren should recuse himself; that Judge Warren should have recused himself because White planned to call him as a witness in the case; and, that Judge Warren was allegedly biased, partial, and discriminated against him due to his race.

{¶20} Initially, we note that White is mistaken regarding the ruling. The Chief Justice of the Supreme Court of Ohio specifically denied White's affidavit seeking disqualification of Judge Warren from presiding in the case. Additionally, this Court is without authority to review the denial of his motion for recusal, as such matters lie exclusively within the jurisdiction of the Chief Justice of the Supreme Court of Ohio. See *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441-42, citing Section 5(C), Article IV, Ohio Constitution.

{¶21} Accordingly, we overrule White's fourth assignment of error.

*Assignment of Error Nos. V & IX*

{¶22} We interpret White's fifth assignment of error as arguing that the trial court erred in refusing to toll the start date of the statute of limitations period for malpractice actions. Specifically, White argues that he was under duress, on medication, and incarcerated when he wrote his complaint, and that he was mistaken in citing July 2007 as the month in which he discharged his attorney. It appears that, alternately, White argues that his complaint was not for malpractice, but was an action on a contract, invoking the fifteen-year statute of limitations set forth in R.C. 2905.06, an action on fraud under R.C. 2305.09, invoking a four-year statute of limitations, an action subject to the "opportunity sale," invoking a five-year statute of limitations as set forth in R.C. 1334.10, or that Stotts was not acting as an attorney, but as an escrow agent, invoking a fifteen-year statute of

limitations. We interpret White's ninth assignment of error as making the same argument: that the trial court's decision to grant summary judgment was in contravention of Ohio's fraud statute and savings statute.

**{¶23}** We first address White's alternate argument that his complaint did not lie in malpractice, but in several different theories.

**{¶24}** Initially, we note that R.C. 2905.06, cited by White, is a repealed statute governing sexual offenses. We presume that White intended to invoke his argument regarding actions on contract under R.C. 2305.06, which provides that actions upon contracts "shall be brought within fifteen years after the cause thereof accrued." The Supreme Court of Ohio has held that, "[t]he crucial consideration in determining the applicable statute of limitations in a given action is the actual nature or subject matter of the cause, rather than the form in which the complaint is styled or pleaded. *Hunter* [*v. Shenango Furnace Co.* (1988)], 38 Ohio St.3d [235] at 237 * * *. A party cannot transform one cause of action into another through clever pleading or an alternate theory of law in order to avail itself of a more satisfactory statute of limitations. *Love v. Port Clinton* (1988), 37 Ohio St.3d 98, 100 * * *." *Callaway v. Nu-Cor Automotive Corp.*, 166 Ohio App.3d 56, 2006-Ohio-1343, ¶14.

**{¶25}** Consequently, courts have found that, even where a plaintiff's pleadings frame his arguments against an attorney not as malpractice, but as

claims on theories such as breach of contract, misrepresentation, or promissory estoppel, if the gravamen of the complaint is legal malpractice, the one-year statute of limitations will apply. *Leski v. Ricotta*, 8th Dist. No. 83600, 2004-Ohio-2860, ¶8. See, also, *Muir v. Hadler Real Estate Management Co.* (1982), 4 Ohio App.3d 89, 90 (finding that "[a]n action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice within the meaning of R.C. 2305.11, regardless of whether predicated upon contract or tort or whether for indemnification or for direct damages"); *Hibbett v. Cincinnati* (1982), 4 Ohio App.3d 128, 131 (finding that "[i]n Ohio the applicable statute of limitations is determined not from the form of pleading or procedure, but from the gist of the complaint").

{¶26} Here, White titled his claims to the trial court as malpractice, "dereliction of duty," "ineffectiveness of counsel," "fraud," "co-conspiracy to fraudulent behavior," "extortion," "co-conspiracy to extortion," "discrimination," "co-conspiracy to discrimination," "unethical behavior," "not in client best interest," and "misrepresentation." Additionally, he phrased his arguments to this Court on appeal as claims for breach of contract, fraud, "opportunity sale," or Stotts' actions as an escrow agent. Despite White's classification of his claims, we find that the gravamen of his complaints lies in Stotts' legal representation of

him. Consequently, the applicable statute of limitations is one year as set forth in R.C. 2305.11(A), governing malpractice claims.

{¶27} Next, we address White's alternate argument that the trial court erred in refusing to toll the start date of the one-year statute of limitations period.

{¶28} The Supreme Court of Ohio has held that the one-year statute of limitations period set forth in R.C. 2305.11 begins to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, syllabus, citing *Omni-Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385.

{¶29} Regarding tolling of the applicable statute of limitations, R.C. 2305.16 governs tolling based on disabilities, and provides, in pertinent part:

> **Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is * * *of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. * * ***

{¶30} Additionally, "R.C. 2305.16 does not toll the statute of limitations for people who are incarcerated, but applies to people who are minors or who are

of unsound mind. R.C. 2305.15(B) works as a tolling statute for persons who wish to sue an imprisoned person. However, the statute does not toll the statute of limitations for inmates who wish to sue others." *Goins v. Attorney General*, Ohio Ct.Cl. 2002-02400-AD, 2003-Ohio-2177, ¶37. See, also, *Gullatte v. Rion* (2000), 145 Ohio App.3d 620, 627.

**{¶31}** Courts have also held that the filing of a legal malpractice claim, or grievance, with a local bar association does not toll the statute of limitations for filing a legal malpractice claim in a common pleas court. *Lewis v. Roselle* (1990), 63 Ohio App.3d 254, 255-56, citing R.C. 2305.11(A), *Jacobs v. Shelly & Sands, Inc.* (1976), 51 Ohio App.2d 44.

**{¶32}** Here, White alleges that the tolling events included several fair housing organizations' and civil rights commissions' investigations of his claims beginning in August 2007, the office of disciplinary counsel's investigation of Stotts, his consulting with other attorneys on the matter, his hospitalization in July 2008, his time spent in a nursing home, his receipt of physical therapy, his receipt of care by several veteran's clinics, and his arrest and confinement. However, none of the events alleged by White, even presumed to be true, tolls the statute of limitations. He offers no legal support for his assertion that fair housing organizations' or civil rights commissions' investigations of his claims tolls the period. Further, as discussed above, no tolling event is recognized for disciplinary

counsel's investigation of an attorney, a plaintiffs' consulting with other counsel concerning his prior attorney's possible malpractice, or because a plaintiff is imprisoned. Additionally, although White asserts he was under "duress" and spent time hospitalized and received care from a nursing home facility, physical therapist, and a veteran's clinic, he has not asserted or offered any evidence that he was of an unsound mind during any of those time periods. See *Scott v. Borelli* (1995), 106 Ohio App.3d 449, 455, quoting *Fisher v. Ohio Univ.* (1992), 63 Ohio St.3d 484, 488 (finding that "a plaintiff who does no more than nebulously make an assertion 'of emotional distress does not create an issue of fact concerning unsound mind'").

**{¶33}** Consequently, we find that the trial court did not err in failing to toll the one-year statute of limitations period.

**{¶34}** Accordingly, we overrule White's fifth and ninth assignments of error.

*Assignments of Error Nos. I, II, III, and VII*

**{¶35}** We interpret White's first, second, and third assignments of error as contentions that the trial court erred in refusing to compel Stotts to comply with White's discovery requests or to respond to his motions. Similarly, White's seventh assignment of error argues that the trial court erred in declining to sanction Stotts for allegedly failing to abide by the Civil Rules of Procedure.

{¶36} An appellate court reviews a trial court's decision regarding disposition of discovery issues for abuse of discretion. *Portman v. Mabe*, 3d Dist. No. 15-07-12, 2008-Ohio-3508, ¶13, citing *State ex rel. The V. Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 1998-Ohio-329. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. Additionally, even if the trial court's refusal to compel compliance with discovery requests was an abuse of discretion, we will not overturn that decision unless the appellant can demonstrate that he was prejudiced. See *Henry Spack Service v. Pietrzak*, 7th Dist. No. 04 CO 57, 2005-Ohio-6780, ¶12, citing *Ruvolo v. Homovich*, 149 Ohio App.3d 701, 2002-Ohio-5852, ¶15.

{¶37} Here, the trial court's April 2010 Pretrial Order reflects that the trial court specifically mentioned that White indicated he had not been provided discovery, and that Stotts replied that White's requests were only intended to harass. Thereafter, the trial court ordered that "[a]ny other motion practice is stayed until ruling on summary judgment." (Apr. 22, 2010 Pretrial Order, p. 1). As this order reflects that pending motions were stayed pending decision on Stotts' motion for summary judgment, we cannot find that the trial court abused its discretion in refusing to compel Stotts to comply with White's discovery requests.

{¶38} Further, even assuming for argument's sake that the trial court abused its discretion in failing to compel Stotts' compliance with White's

discovery requests, we find that White has failed to demonstrate any prejudice. White's June 2009 complaint alleged that he dismissed Stotts in July 2007 for malpractice, among other reasons. Further, White's December 16, 2009 "Motion on Fact on Tolling Time," asserted that he initiated an investigation into the matter by "Ohio Fair Plan" in August 2007. Stotts' July 2009 affidavit in support of his motion to dismiss stated that he "was retained by Plaintiff for one matter relating to an attempted purchase of a house on or about August 24, 2007," and his April 2010 motion for summary judgment was supported by his affidavit that, in June 2007, he represented White regarding the purchase of two parcels of real estate; that, in July 2007, White terminated his legal representation; and, that, since July 2007, he had not represented White and had no contact with him. Although there are some discrepancies in the record as to whether the cause of action accrued in July or August 2007, this is not a *material* issue of fact, as, under either of those dates, White's June 2009 complaint was well past the one-year statute of limitations, and this fact is not contradicted by any other evidence in the record. See *Zimmie,* supra, *Omni-Food & Fashion*, supra (holding that the statute of limitations begins to run upon the latter of the client's discovery of the need to pursue a possible remedy against his attorney or termination of the attorney-client relationship).

{¶39} Accordingly, we overrule White's first, second, third, and seventh assignments of error.

*Assignment of Error No. VI*

{¶40} In his sixth assignment of error, White argues that the trial court erred in failing to join all necessary defendants.

{¶41} App.R. 16(A)(7) requires that an appellant's brief contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Where an argument does not comply with App.R. 16, this Court may decline to review it. See *Brown v. Senor Gringo's, Inc.*, 3d Dist. No. 4-09-18, 2010-Ohio-985, ¶53.

{¶42} We note, initially, that White does not identify in his brief which necessary parties the trial court erred in failing to join. However, we assume from the wording of his "Motion for Joinder to Lawsuit Claim," that he is referring to "Kevin Stotts' Malpractice Insurance Company," "Partner's Insurance Company," and "Title Company Insurance Company." Even assuming that these are the parties' to which White refers, however, White sets forth no argument or citations to authorities as to why these were necessary parties to the action. Further, we cannot glean what his argument might be from his "Motion for Joinder to Lawsuit

Claim," as it also contains no argument or reason why the purported parties should be joined as defendants. We find that White has not sufficiently set forth this assignment of error for our review, as his brief lacks any reasons in support.

{¶43} Accordingly, we overrule White's sixth assignment of error.

*Assignment of Error No. VIII*

{¶44} In his eighth assignment of error, White argues that the trial court erred when it ruled on Stotts' motion for summary judgment after being notified that it had not apparently been served on White.

{¶45} "A presumption of proper service exists when the record reflects that the Civil Rules pertaining to service of process have been followed. This presumption may only be rebutted by producing sufficient evidence, such as an affidavit, that the responding party never received service." (Internal citations and quotations omitted.) *JP Morgan Chase Bank v. Ritchey*, 11th Dist. No. 2006-L-247, 2007-Ohio-4225, ¶40.

{¶46} Here, Stotts' motion for summary judgment was accompanied by a certificate of service indicating that the motion was served on White on April 21, 2010. Thus, the record reflects that the appropriate Civil Rules were followed. Additionally, we find that the trial court did not err in apparently finding that White failed to rebut the presumption of proper service, as he provided no

evidence supporting his claim except for his own self-serving statements, which were not in affidavit form.

**{¶47}** Consequently, we overrule White's eighth assignment of error.

*Assignment of Error No. X*

**{¶48}** In his tenth assignment of error, White argues that the trial court erred in refusing to permit any witnesses to testify at the pretrial hearing. Specifically, White contends that the witnesses' testimony would have established that genuine issues of material fact existed.

**{¶49}** Initially, we note that the subpoenas appearing in the record to the Columbus Civil Commission, Laurels of Toledo Nursery [sic] Home, Dayton Regional Civil Commission, the Federal Reserve, Busy B Realty, the Veteran Affairs Clinic, and Eric Jones, were all returned unserved due to insufficient time for service, incomplete addresses, or because they were addressed to a vacant building. Additionally, Fifth Third Bank filed a motion to quash the subpoena on the basis that it was unreasonable, sought confidential records, and was intended to harass.

**{¶50}** Further, White filed no transcript of the pretrial hearing. The duty to provide a transcript for appellate review falls upon the appellant. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199; App.R. 16(A)(7). Where a transcript is necessary to resolve the assigned errors, yet is not provided, the

appellate court has nothing to pass upon and must presume validity of the trial court's proceedings. *Knapp*, supra. Here, this Court has no transcript to examine what witnesses were or were not present, whether the trial court refused to permit any witnesses to testify at the pretrial hearing, or why the trial court took these actions. Consequently, we must presume that the trial court committed no error.

{¶51} Accordingly, we overrule White's tenth assignment of error.

*Assignment of Error No. XI*

{¶52} We interpret White's eleventh assignment of error as arguing that the trial court erred in not allowing him to freely amend his motions.

{¶53} An appellate court reviews a trial court's denial of a Civ.R. 15(A) motion to amend under an abuse of discretion standard. *United Studios of Am. v. Laman*, 5th Dist. No. 2007CA00277, 2008-Ohio-3497, ¶32.

{¶54} Civ.R. 15(A) governs amendments and provides, in pertinent part:

**A party may amend his pleading once as a matter of course at any time before a responsive pleading is served * * * [.] Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. * * ***

{¶55} The record here reflects that White filed the complaint at issue in June 2009, asserting that he terminated the attorney-client relationship in July 2007; that Stotts filed a motion for summary judgment on April 21, 2010; that the trial court held the pretrial on April 22, 2010; and, that, on April 26, 2010, White

filed a "Motion for Leave to Amend Date of Proximate Accrued Cause of Discovery of Damage Date on Complaint" asserting that the cause of action accrued in April 2009, instead of July 2007. White attached no affidavit or other evidence to his motion for leave to amend the complaint. Therefore, White filed his motion to amend ten months after filing his initial complaint, after the pretrial had taken place, and after Stotts' motion for summary judgment was already pending and ripe for decision. Further, White's motion to amend the date of discovery in his complaint was a bare assertion of a legal conclusion, and was unsupported by any evidence in the record, or even an affidavit. Finally, White offered no explanation for his delay in amending his complaint.

{¶56} On these facts, we cannot find that the trial court abused its discretion in denying White's motion for leave to amend his complaint. See *Natl. City Mtge. v. Skipper*, 9th Dist. No. 24772, 2009-Ohio-5940, ¶8 (finding that "an attempt to amend a complaint following the filing of a motion for summary judgment raises the spectre of prejudice. Therefore, plaintiffs should not be permitted to sit by for this period and bolster up their pleadings in answer to a motion for summary judgment"); *Wallner v. Thorne*, 9th Dist. No. 09CA0053-M, 2010-Ohio-2146 (finding that a trial court did not abuse its discretion in denying a motion to amend where the parties gave no reason to justify the delay in moving to amend their complaint, and appeared to serve only to delay the court's ruling on

the pending motion for summary judgment). See, also, *Bachtel v. Jackson*, 10th Dist. No. 08AP-714, 2009-Ohio-1554, ¶27.

{¶57} Accordingly, we overrule White's eleventh assignment of error.

{¶58} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**